IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JARVIS M. HANDY )
)
v. ) NO. 3:06-0331
)
GANNETT SATELLITE INFORMATION )
NETWORK, INC. )

TO: Honorable Robert L. Echols, District Judge

# REPORT AND RECOMMENDATION

By Order entered April 13, 2006 (Docket Entry No. 3), the Court referred this action to the Magistrate Judge for review under 28 U.S.C. § 1915(e)(2)(B) and for further proceedings under 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure.

Presently pending before the Court is Defendant's motion (Docket Entry No. 100) for summary judgment. Plaintiff has filed a response (Docket Entry No. 113-114) in opposition and Defendant has filed a reply (Docket Entry No. 115). Plaintiff has also filed a sur-reply. See Docket Entry No. 117.[1]

For the reasons set out below, the Court recommends that the motion for summary judgment be granted and this action be dismissed.

---

[1] By a contemporaneously entered order, the Court has granted Plaintiff's motion (Docket Entry No. 117) to file a sur-reply.

# I. BACKGROUND

Plaintiff filed this action pro se and in forma pauperis on April 7, 2006, alleging that he was wrongfully terminated from his employment as a telemarketer for the Tennessean Newspaper ("The Tennessean"). The complete factual allegations set out in the complaint are as follows:

> I had been employed by "The Tennessean" since September 17, 2004. On July 14, 2005, I was discharged from my employment. In early July 2005 via a letter, I told a co-worker not to talk to me unless the topic she wished to discuss was work related. Because this coworker was one of my many harassers on the job, I also wrote that I would pursue harassment charges if her behavior towards me continued. On July 12, 2005 I was suspended pending investigation of the letter. The letter was deemed to be a threat and I was terminated two days later.

See Complaint (Docket Entry No. 1) at 2. Plaintiff attached to the complaint copies of various documents, including, inter alia: (1) a charge of discrimination Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") against The Tennessean, dated June 1, 2005 (# 253-2005-02166), alleging that he had been rejected for an internal position at The Tennessean because of retaliation and religious discrimination; (2) a charge of discrimination Plaintiff filed against The Tennessean, dated September 23, 2005 (# 253-2005-03588), alleging that he had been terminated from his employment in retaliation for filing a prior charge of discrimination; and (3) two right to sue letters, both dated November 22, 2005, issued by the EEOC for charges # 253-2005-02166 and 253-2005-03588.

By Order entered May 25, 2006 (Docket Entry No. 4), the Court construed Plaintiff's complaint as alleging a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and ordered that process issue to The Tennessean.[2] Upon Plaintiff's failure to amend his

---

[2] By Order entered October 16, 2006 (Docket Entry No. 27), Gannett Satellite Information Network, Inc. ("Gannett") was substituted as the named defendant to the action. Although The Tennessean is not Defendant's correct name, the Court has referred to "The Tennessean" throughout

2

complaint, the action was limited to the single claim that Plaintiff was subjected to a retaliatory termination from his employment. See Order entered October 16, 2006 (Docket Entry No. 27), at 3, and Report and Recommendation (Docket Entry No. 36), at 2.

By Order entered July 6, 2007 (Docket Entry No. 48), the Court denied Defendant's motion to dismiss the action as untimely and for failure to state a claim. The parties have engaged in pretrial activity pursuant to a scheduling order (Docket Entry No. 37) and amendments to the scheduling order deadlines (Docket Entry Nos. 47, 64, 89, and 106). The action is currently set for a bench trial[3] on May 27, 2008. See Order entered July 11, 2007 (Docket Entry No. 49).

## II. MOTION FOR SUMMARY JUDGMENT

Defendant contends that, on or about July 8, 2005, one of Plaintiff's co-workers, Theresa Buntin, complained that she had received a threatening letter from Plaintiff after having had a conversation with him in an office stairwell. The letter stated:

> Please make the incident in the stairwell the last. There is absolutely no reason for you and I to exchange non-work-related words.
>
> I don't want, and will not, exchange words of any kind with you other than those that pertain to the job, and even in that case it would have to be requested of me by a supervisor. This is a request from me to you. If it happens again I will be forced to prosecute based on harassment. Thank you for your understanding.

See Affidavit of April Bolin, at Exhibit No. 1 (Docket Entry No. 103-1).

---

this Report and Recommendation simply for ease of reference.

[3] By Order entered December 7, 2007 (Docket Entry No. 78), the Magistrate Judge denied Plaintiff's motion requesting a jury trial instead of a bench trial. Plaintiff did not seek review of this Order.

Defendant asserts that April Bolin, Plaintiff's supervisor, and Elsie Michelle Eades, a Human Resources Consultant with Gannett, investigated the incident in response to Ms. Buntin's complaint. Both Ms. Buntin and Plaintiff were interviewed and, after Plaintiff admitted that he wrote and sent the letter, Ms. Bolin made the decision to terminate Plaintiff's employment. Ms. Bolin thereafter sent Plaintiff a letter, dated July 14, 2005, notifying him that the letter he sent Ms. Buntin was determined to be harassment and "was the most recent incident in a series of events impacting your employment at The Tennessean. Effective immediately your employment is terminated." See Affidavit of April Bolin, at Exhibit #3 (Docket Entry No. 103-3).

Defendant argues that Plaintiff's conduct constituted a legitimate reason for his termination and that Plaintiff's previous filing of a charge of discrimination with the EEOC was not a factor in the decision to terminate his employment. Defendant argues that Plaintiff's claim of retaliation is based entirely upon his own subjective speculation and is unsupported by any evidence. Defendant contends that Plaintiff fails to raise a genuine issue of material fact concerning his claim which warrants submission of the claim to the trier of fact and that it is entitled to summary judgment as a matter of law.

Defendant supports its motion with the affidavit of April Bolin (Docket Entry No. 103), the affidavit of Elsie Michelle Eades (Docket Entry No. 104), and a copy of Plaintiff's deposition (Docket Entry No. 105).

### III. PLAINTIFF'S RESPONSE IN OPPOSITION

Plaintiff responds by asserting that genuine issues of material fact exist which warrant the denial of summary judgment. Plaintiff first contends that a factual issue exists concerning whether,

4

at the time she made the termination decision, April Bolin was aware that he had filed a charge of discrimination with the EEOC. He argues that, despite her affidavit statement that she did not know about the charge of discrimination at the time she made the decision, other evidence suggests that she was aware that he had filed the charge of discrimination. See Plaintiff's Response (Docket Entry No. 114), at 2-3.

Plaintiff also points to several matters which he contends show that Defendant's asserted reason for terminating his employment was a pretext for retaliation. He points out that, prior to his termination, the only other disciplinary action he had received at The Tennessean was a written reprimand for being tardy. He contends that the lack of a disciplinary record casts doubt upon the seriousness of other workplace incidents to which Defendant referred in the termination letter and in its motion for summary judgment. Plaintiff also argues that: (1) Defendant has set forth contradictory accounts of what occurred in the stairwell between Plaintiff and Ms. Buntin; (2) the anti-harassment policy at the Tennessean did not specifically prohibit the conduct for which he was purportedly terminated; (3) Defendant did not provide him with a warning prior to termination, despite the fact that supervisors at his work had told him that a verbal warning would be an appropriate response to someone who was sexually harassing Plaintiff; (4) his conduct of threatening a co-worker whom he felt was harassing him is legal under Tennessee law and not prohibited by any policy identified by Defendant; and (5) he was not provided with a progressive level of disciplinary action rather than immediate termination.

Plaintiff supports his response with several exhibits, see attachments to Docket Entry No. 114, and with his response (Docket Entry No. 113) to Defendant's Statement of Undisputed Material Facts. Plaintiff also relies upon his responses to discovery requests which the Court

5

compelled him to provide.[4]  See Docket Entry No. 108.  Included in the responses is a copy of tape recordings he surreptitiously made of three conversations he had with Sales and Marketing Manager Tim Baumgartner and Vice President of Circulation Steve Ecken on May 24 and 27, 2005, regarding Plaintiff's complaint of sexual harassment against a supervisor.

## IV. DEFENDANT'S REPLY AND PLAINTIFF'S SUR-REPLY

Defendant submits a reply in which it contends that six responses made by Plaintiff to Defendant's Statement of Undisputed Material Facts are either contradicted by or unsupported by the record.  Defendant argues that Plaintiff is attempting to create genuine issues of material fact by contradicting his own deposition testimony.  Defendant asserts that Plaintiff has set forth arguments and documents in his response in opposition to summary judgment about which he did not testify in his deposition despite being thoroughly questioned about what basis he had for believing that he was terminated in retaliation for having filed the charge of discrimination with the EEOC.

Plaintiff, in his sur-reply, disputes the arguments made by Defendant in its reply and continues to assert that he has created genuine issues of material fact based on specific pieces of evidence.

---

[4] By Order entered February 13, 2008 (Docket Entry No. 99), the Court granted Defendant's motion to compel production of documents and ordered Plaintiff to "serve the requested documents at issue on the defendant within ten (10) days of entry of this Order."  Plaintiff was not ordered to produce documents for the Court.

## IV. STANDARD OF REVIEW

Summary judgment is warranted in favor of one party if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Federal Rule of Civil Procedure 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The ultimate question to be addressed is whether there are any genuine issues of disputed material fact. See Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

A genuine issue exists "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in that party's favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. However, the nonmoving party may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting the claims raised and establishing the existence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 324; Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The nonmoving party "is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." Gaines v. Runyon, 107 F.3d 1171, 1174-75 (6th Cir. 1997). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Shah v. Racetrac Petroleum Co., 338 F.3d 557, 566 (6th Cir. 2003) (quoting Liberty Lobby, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "is not significantly probative" or is not enough to lead a fair-minded [trier of fact] to find for the nonmoving party, the motion for summary judgment should be granted. Liberty Lobby, 477 U.S. at 249-52.

## V. ANALYSIS

Plaintiff's retaliation claim is based upon 42 U.S.C. § 2000e-3(a), which provides in relevant part as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ⋯ because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

This section prohibits an employer from retaliating against an employee who has "opposed" any practice made unlawful under Title VII or who has "participated" in any manner in an investigation under Title VII. See Morris v. Oldham County Fiscal Court, 201 F.3d 784, 791-92 (6th Cir. 2000); Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1312 (6th Cir. 1989).

Plaintiff may establish retaliation either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation. DiCarlo v. Potter, 358 F.3d 408, 420 (6th Cir. 2004). Direct evidence is evidence, which if believed, requires no inferences to conclude that unlawful retaliation was a motivating factor in the challenged action on the part of Defendant. Abbott v. Crown Motor Co., 348 F.3d 537, 542 (6th Cir. 2003). Plaintiff does not set forth any direct evidence of retaliation.

8

As such, Plaintiff's claim is analyzed as a circumstantial evidence case in which the same McDonnell Douglas/Burdine evidentiary framework for discrimination claims is used to analyze his retaliation claim. Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987) (applying McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), to a retaliation claim).

In order to make out a prima facie case of retaliation, Plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to Defendant; (3) Defendant thereafter took adverse employment action against him; and (4) there was a causal connection between the protected activity and the adverse employment action. Morris, supra. If Plaintiff succeeds in making out the elements of a prima facie case, "the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." Id. at 792-93 (quoting McDonnell Douglas, 411 U.S. at 802).

If Defendant satisfies its burden of production, the burden shifts back to Plaintiff to demonstrate not only that Defendant's proffered reason was a pretext, but also that the real reason for his termination was intentional retaliation. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); Imwalle v. Reliance Medical Products, Inc., 515 F.3d 531, 544 (6th Cir. 2008). Plaintiff can demonstrate that the proffered reason was a pretext for unlawful retaliation by showing that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the challenged conduct; or (3) was insufficient to warrant the challenged conduct. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994). Although the

9

burden of production shifts between the parties, Plaintiff bears the burden of persuasion throughout the process. Morris, 201 F.3d at 793.

In the instant action, the Court finds summary judgment should be granted in favor of Defendant. Even if the Court assumes that Plaintiff met his burden of showing a prima facie case,[5] Defendant has proffered a legitimate, non-retaliatory reason for the decision to terminate Plaintiff's employment. Plaintiff's evidence of pretext is inadequate to support a Title VII claim by showing that he was, in fact, the victim of a retaliatory discharge.

The undisputed fact is that Plaintiff admitted to writing a letter to a co-worker in which he threatened that he would "be forced to prosecute based on harassment" if she spoke to him about anything which was non-work related. After Plaintiff's supervisor learned of this letter on or about July 8, 2005, an investigation was conducted and Plaintiff was terminated within a week for the stated reason that the letter was harassment and was the most recent incident in a series of incidents impacting his employment at The Tennessean.

Defendant's stated reason for Plaintiff's termination is both a legitimate and a non-retaliatory reason on its face. The reason was based on articulated and undisputed facts, and the short length of time and the chain of events occurring between Defendant's knowledge of the incident and the termination decision strongly suggests the decision was motivated by Plaintiff's act of sending the letter to Ms. Buntin. Regardless, Defendant "need not persuade the court that it was actually

---

[5] Plaintiff's burden to establish a prima facie case of retaliation "is not onerous." Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 377 (6th Cir. 1984). Indeed, it "is a burden easily met." Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987). Accordingly, the Court assumes, for the purpose of this motion, that Plaintiff's evidence regarding Ms. Buntin's knowledge of his protected activity raises a genuine issue of material fact on the third element of the prima facie case and that he has likewise set forth sufficient evidence satisfying the causal connection element of his prima facie case.

10

motivated by the proffered reasons" in order to fulfill its burden of proffering a reason for the challenged action. Burdine, 450 U.S. at 254. As Defendant has satisfied its burden of production, the burden shifts to Plaintiff to prove pretext.

Because Plaintiff cannot show that the stated factual basis for his termination did not exist, i.e., that he did not write the letter, he fails to show pretext by the first prong set out in Manzer. Accordingly, the Court shall view his several arguments on the issue of pretext as attempts to show pretext via the second and third methods of proof suggested in Manzer. See 29 F.3d at 1084.

To satisfy these two methods of showing pretext, Plaintiff must set forth evidence which shows either that the asserted reason was not a sufficient basis for the challenged action or that the sheer weight of the circumstantial evidence of retaliation makes it more likely than not that Defendant's explanation is a pretext or coverup. Plaintiff fails in both of these showings. At best, his evidence shows only that he disagreed with Defendant's investigation of the incident in question, that Defendant could have acted differently, or that Defendant may have made mistakes. However, such evidence falls short of showing pretext. See Michael v. Caterpillar Financial Services Corp., 496 F.3d 584, 598-600 (6th Cir. 2007).

In making this determination, the Court notes that it is not within the purview of the Court to generally review the correctness of employment and management practices or decisions made by Defendant. See Smith v. Leggett Wire Co., 220 F.3d 752, 763 (6th Cir. 2000). See also Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084-85 (6th Cir. 1994). The soundness of an employer's decision is not a matter of concern under Title VII as long as the employer has not made a decision based on grounds forbidden by federal law. See Minor v. Centocor, Inc., 457 F.3d 632,

11

634 (7th Cir. 2006). With this principle in mind, the Court turns to the specific arguments made by Plaintiff.

Plaintiff argues that the affidavit of Ms. Eades, the affidavit of Ms. Bolin, and the written statement of Ms. Buntin each sets forth slightly different versions of the exact chain of events which occurred in the stairwell between Plaintiff and Ms. Buntin and are slightly different from Defendant's Statement of Undisputed Material Facts at ¶¶ 14-15. Even if true, this fails to raise a genuine issue of material fact since it is undisputed that Plaintiff wrote and sent the letter to Ms. Buntin. Any discrepancy between these written statements about what occurred in the stairwell does not negate the fact or the impact of the letter sent by Plaintiff. See Michael, supra.

A genuine issue of material fact is also not raised by Plaintiff based upon his disagreement with the anti-harassment policy at the Tennessean or his belief that the policy was not applicable. It is undisputed that the written anti-harassment policy that was a part of the employee handbook at the Tennessean states, in relevant part, that:

> Employees who feel they have been subjected to sexual harassment, or harassment on any other basis, should immediately report the incident directly to their supervisor, Human Resources or operating unit head.
>
> The facts of the incident will be investigated and the validity of the complaint determined promptly. If it is determined that a complaint is valid, we will take appropriate disciplinary action against the offender based on the severity of the harassment and the individual's employment history. Disciplinary action may include a written warning, suspension, demotion and/or termination of employment. If the harasser is not an employee, we will take appropriate action to see that the harassment stops.

See Affidavit of Elsie Eades, at Exhibit 7 (Docket Entry No. 104-7).

It is irrelevant that the policy did not specifically prohibit the act of sending a threatening letter to a co-worker or that it did not define inappropriate workplace behavior. The wording and

12

scope of Defendant's anti-harassment policy is a matter for Defendant to define, and it is certainly within Defendant's discretion to determine what conduct fits within its own policies. See Smith, supra. No reasonable trier of fact could find that Defendant acted arbitrarily or irrationally by determining that Plaintiff's conduct of sending the threatening letter was an act covered within the scope of the policy.

Plaintiff's argument that he believed that the sending of his letter to Ms. Buntin was not itself an illegal act is of no relevance. First, Plaintiff was not terminated from his employment for engaging in illegal behavior. Second, an employer may certainly take adverse action against an employee for conduct which the employer believes warrants discipline even though the conduct is not illegal under local, state, or federal laws.

Plaintiff's argument that he should have been given a written warning or some type of progressive level of discipline prior to his termination also fails to support his claim. Plaintiff has presented no evidence that he was entitled to any manner of progressive discipline under the terms of his employment with Defendant. He attempts to show that there was a system of progressive discipline at The Tennessean by pointing to the content of recordings he surreptitiously made of three conversations he alleges that he had with Ms. Eades, Mr. Baumgartner, and Mr. Ecken, management employees at The Tennessean. Plaintiff asserts that they told him that he should warn his supervisor if he felt she was sexually harassing him and that a written warning might be a proper course of action to take against the supervisor if she had, in fact, sexually harassed Plaintiff.

13

Plaintiff's argument is meritless.[6] Even if these conversations were admissible evidence, they fail to support Plaintiff's assertion. First, the conversations at issue were simply informal conversations or suggestions and were certainly not pronouncements of a formal disciplinary policy at The Tennessean. Second, there is no actual evidence before the Court that a progressive disciplinary policy existed or was implemented at The Tennessean for employees who held Plaintiff's position, and Plaintiff has offered absolutely no evidence of any other similarly situated employee at The Tennessean who was disciplined under a progressive disciplinary policy. Third, even if there were proof that a warning was given to an employee or supervisor as an admonishment for some type of work related misbehavior, this proof alone does not, in the absence of other evidence, suggest that a policy existed at The Tennessean which mandated that a warning be given prior to the imposition of other types of disciplinary action.

Finally, the Court finds it to be of little importance that, other than the single incident of being tardy to work which Plaintiff admitted in his response in opposition to the motion for summary judgment, Defendant had not disciplined Plaintiff for any workplace incidents prior to his termination from employment at The Tennessean. While Plaintiff may not have been subject to any type of disciplinary action for previous acts occurring in the workplace, it is nonetheless undisputed that he had been involved in several peculiar incidents involving either his workplace behavior or

---

[6] Defendant argues that the fact that these conversations were secretly recorded by Plaintiff constitutes after-acquired evidence which further supports Plaintiff's discharge. See Defendant's Memorandum (Docket Entry No. 101), at 9-10. Although such evidence can certainly be used to limit the damages a plaintiff may be entitled to in an employment discrimination case, see McKennon v. Nashville Banner Publ'g. Co., 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), such evidence does not preclude recovery. Defendant's knowledge that Plaintiff made such recordings was clearly not a basis for the termination decision at issue and, thus, does not factor into the determination of whether Plaintiff makes a sufficient showing of pretext to survive summary judgment.

14

his interaction with other employees at The Tennessean.[7] Defendant's failure to discipline Plaintiff for any of these incidents in no way precludes Defendant from referring to the incidents or relying on them in its final assessment of Plaintiff's employment status at The Tennessean.

Furthermore, to the extent that Plaintiff's evidence could be construed as showing that Defendant's decision was mistaken, foolish, trivial, or baseless, the undisputed evidence nonetheless clearly shows that Defendant relied on particularized facts that were before it at the time it made the decision to terminate Plaintiff's employment. It thus acted upon an honest belief in its stated reason which rebuts any showing of pretext by Plaintiff. See Clay v. United Parcel Services, Inc., 501 F.3d 695, 713-15(6th Cir. 2007); Wright v. Murray Guard, Inc., 455 F.3d 702, 708 (6th Cir. 2006); Smith v. Chrysler Corp., 155 F.3d 799, 806 (6th Cir. 1998).

Even when the evidence before the Court is viewed in the light most favorable to Plaintiff as the non-moving party, no reasonable trier of fact could find that Plaintiff was fired for anything other than the reason stated by Defendant. There is simply insufficient evidence before the Court upon which any reasonable trier of fact could find in favor of Plaintiff on his claim that he was terminated from his employment as retaliation for engaging in protected activity and thus this action should be dismissed as a matter of law prior to trial.[8]

---

[7] For example: (1) Plaintiff wore band-aids on his face to work upon which he wrote symbols or words, including one instance when he wrote the word "death" on the band-aid, see Plaintiff's Deposition (Docket Entry No. 145), at 38 and 142; (2) Plaintiff brought an empty gas can to work and placed it under his desk, id., at 139-140; (3) Plaintiff sent letters to supervisors asking them not to say "hello" to him, not greet him, and not say anything to him unless it was a work-related discussion, see Plaintiff's Response to Defendant's Statement of Undisputed Facts (Docket Entry No. 113), at ¶¶ 4-5.

[8] In concluding that summary judgment should be granted, the Court finds the arguments advanced by Defendant in its Reply (Docket Entry No. 115) to be entirely unpersuasive. A fair reading of the entire deposition clearly indicates that, while Plaintiff admitted to having no direct proof of retaliation, he believed that retaliation occurred based upon circumstantial evidence and

15

## R E C O M M E N D A T I O N

Accordingly, the Court respectfully RECOMMENDS that Defendant's motion (Docket Entry No. 100) for summary judgment be GRANTED and this action be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                            Respectfully submitted,

                                            JULIET GRIFFIN
                                            United States Magistrate Judge

---

events from which retaliation could be inferred. The Court finds nothing in the deposition which forecloses the pro se Plaintiff from opposing summary judgment with the type of evidence and arguments which he has presented.